1  MARC J. SCHNEIDER, State Bar No. 214609
     mschneider@sycr.com
2  STEPHEN L. RAM, State Bar No. 240769
     sram@sycr.com
3  RYAN W. SMITH, State Bar No. 272361
     rsmith@sycr.com
4  JESSICA L. MULLEN, State Bar No. 288845
     jmullen@sycr.com
5  STRADLING YOCCA CARLSON & RAUTH, P.C.
   660 Newport Center Drive, Suite 1600
6  Newport Beach, CA 92660-6422
   Telephone:  (949) 725-4000
7  Facsimile:  (949) 725-4100

8  Attorneys for Defendant
   ACACIA RESEARCH CORPORATION

9

## UNITED STATES DISTRICT COURT

10

## CENTRAL DISTRICT OF CALIFORNIA

11

## SOUTHERN DIVISION

12

| | |
|---|---|
| 13  HTC CORPORATION, HTC AMERICA, INC., | Case No. SACV15-00378-CJC (DFMx) |
| 14 | |
| 15           Plaintiffs, | **ACACIA RESEARCH CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS** |
| 16      v. | |
| 17  ACACIA RESEARCH CORPORATION, SAINT LAWRENCE COMMUNICATIONS LLC, | |
| 18 | |
| 19           Defendants. | Hearing: Date:     September 14, 2015 |
| 20 | Time:     1:30 p.m. Ctrm:     9B Judge:    Hon. Cormac J. Carney |
| 21 | |
| 22 | Action File:  March 9, 2015 Trial Date:    None Set |

23

24

25

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

ACACIA'S REPLY IN SUPPORT OF MOTION TO DISMISS

LITIOC/2123214v6/101022-0123

# TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................. - 1 -

II.     ARGUMENT ...................................................................................... - 3 -

    A.   The Opposition Ignores That There Is No Case Or Controversy
        Between Plaintiffs And ARC For Declaratory Relief. ................... - 3 -

        1.   The Opposition Ignores That There Is No Adverse Legal
            Interest Between The Parties. ................................. - 4 -

            a.   Plaintiffs Do Not Dispute That ARC Cannot Sue
                Plaintiffs For Infringement Because ARC Is Not
                An Owner Or Licensee Of The Patents...................... - 4 -

            b.   Plaintiffs Do Not Dispute That A Parent Company
                Of A Patent Holder Is Not A Proper Defendant For
                A Declaratory Relief Claim......................................... - 5 -

        2.   The Opposition Ignores That ARC Took No Affirmative
            Act To Enforce The Patents-In-Suit. ..................................... - 6 -

    B.   Plaintiffs' Alter Ego Theory Does Not Create A Case Or
        Controversy For Declaratory Relief. ............................................. - 7 -

    C.   The Complaint And Plaintiffs' New Purported Facts Do Not
        Establish That There Is An Alter Ego Relationship Between
        SLC And ARC. ............................................................................ - 12 -

        1.   The Opposition Does Not Establish That A Fraud Or
            Injustice Would Occur Should SLC Not Be Found To Be
            An Alter Ego Of ARC. ........................................................ - 12 -

        2.   The Opposition Does Not Establish A Unity Of Interest.... - 15 -

    D.   Any Jurisdictional Discovery Or Leave To Amend Will Be
        Futile. .......................................................................................... - 18 -

III.    CONCLUSION .................................................................................. - 20 -

i

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Arris Group Inc. v. British Telecomm. PLC*,
   639 F.3d 1368 (Fed. Cir. 2011) ........................................................... 4

*Calvert v. Huckins*,
   875 F. Supp. 674 (E.D. Cal. 1995) ..................................................... 13

*Cherrone v. Florsheim Dev.*,
   Civ. No. 2:12-02069 WBS CKD, 2012 U.S. Dist. LEXIS 172778
   (E.D. Cal. Dec. 4, 2012) ............................................................. 16, 14

*Dainippon Screen Manufacturing. Co. v. CFMT, Inc.*,
   142 F.3d 1266 (Fed. Cir. 1998) .............................................. 9, 10, 11, 14

*Digitech Image Techs., LLC v. Newegg Inc.*,
   Case No. 2:12-cv-01688-ODW, 2013 U.S. Dist. LEXIS 63828
   (C.D. Cal. May 3, 2013) .................................................................. 5

*Disenos Artisticos, E. Industriales, S.A. v. Costco Wholesale Corp.*,
   97 F.3d 377 (9th Cir. 1996) .............................................................. 8

*Doe v. Unocal Corp.*,
   248 F.3d 915 (9th Cir. 2001) ........................................................... 14

*Electro Source, LLC v. Nyko Technologies, Inc.*,
   No. CV 01-10825 DT, 2002 U.S. Dist. LEXIS 28436
   (C.D. Cal. Apr. 15, 2002) .............................................................. 11

*Firstmark Capital Corp. v. Hempel Financial Corp.*,
   859 F.2d 92 (9th Cir. 1988) ........................................................... 12

*Gerritsen v. Warner Bros. Entertaimentt*,
   No. CV 14-03305 MMM, 2015 U.S. Dist. LEXIS 84979
   (C.D. Cal. June 12, 2015) .............................................................. 14

*Katzir's Floor & Home Design, Inc. v. M-MLS.com*,
   394 F.3d 1143 (9th Cir. 2004) ...................................................... 14, 15

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

ii

ACACIA'S REPLY IN SUPPORT OF MOTION TO DISMISS

LITIOC/2123214v6/101022-0123

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007) ............................................................................... 4

*MMI, Inc. v. Baja, Inc.*,
    743 F. Supp. 2d 1101 (D. Ariz. 2010) ................................................. 16

*Motorola Mobility LLC v. AU Optronics Corp.*,
    775 F.3d 816 (7th Cir. 2014) .................................................................. 8

*Nucal Foods, Inc. v. Quality Egg LLC*,
    887 F. Supp. 2d 977 (E.D. Cal. 2012) ................................................. 15

*Quantum Corp. v. Riverbed Technologies Inc.*,
    No. C-07-04161 WHA, 2008 U.S. Dist. LEXIS 11348
    (N.D. Cal. Feb. 4, 2008) ......................................................................... 8

*Sandoval v. Ali*,
    34 F. Supp. 3d 1031, 1036 (N.D. Cal. 2014) ...................................... 14

*Seaflex, Inc. v. Fall Protection Systems*,
    2007 U.S. Dist. LEXIS 99292
    (S.D. Tex. Nov. 20, 2007) ..................................................................... 11

*Simmons Bedding Co. v. Leggett & Platt, Inc.*,
    2012 U.S. Dist. LEXIS 190592
    (W.D. Wis. Mar. 27, 2012) .................................................................... 10

*Slottow v. American Casualty Co.*,
    10 F.3d 1355 (9th Cir. 1993) ................................................................ 14

*Top Victory Electronics v. Hitachi Ltd.*,
    No. C 10-01579 CRB, 2010 U.S. Dist. LEXIS 125003
    (N.D. Cal. Nov. 15, 2010) ....................................................................... 4

*United States v. Bestfoods*,
    524 U.S. 51 (1998) ......................................................................... 14, 17

*Veterinary Pathology, Inc. v. Cal. Health Lab., Inc.*,
    116 Cal. App. 3d 111 (1981) ........................................................... 15, 16

**STATUTES**

28 U.S.C. § 2201 ...................................................................................... 4

iii

ACACIA'S REPLY IN SUPPORT OF MOTION TO DISMISS

LITIOC/2123214v6/101022-0123

1

**OTHER AUTHORITIES**

2

17 C.F.R. § 210.3-01, 02 ......................................................................................17

3

Fed. R. Civ. P.  8...............................................................................................13

4

Fed. R. Civ. P.  12..............................................................................................9

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

iv

ACACIA'S REPLY IN SUPPORT OF MOTION TO DISMISS

LITIOC/2123214v6/101022-0123

## I.    INTRODUCTION

HTC Corporation ("HTC") and HTC America, Inc.'s (collectively, "Plaintiffs") Opposition purports to dismiss as irrelevant the critical issues raised in Acacia Research Corporation's ("ARC") Motion.  ARC's unchallenged authority teaches that there is no plausible "case or controversy" under both Article III and the Declaratory Judgment Act between Plaintiffs and ARC.  Instead of addressing these issues, the Opposition mainly discusses Plaintiffs' alter ego allegations under the misleading premise that "ARC appears to acknowledge that ARC would be a proper defendant in this suit if it was an alter ego of SLC."  (Opp'n at 1.)  The Motion, however, clearly demonstrates that even if Plaintiffs could establish an alter ego relationship, there is still no justiciable case or controversy for declaratory relief between Plaintiffs and ARC because Plaintiffs admits that Saint Lawrence Communications, LLC ("SLC") owns the patents-in-suit, and thus it is the sole party who can enforce the patents to create a reasonable apprehension of suit against Plaintiffs to justify declaratory relief.

First, the Opposition purports to dismiss as irrelevant and fails to address that there is no case or controversy between Plaintiffs and ARC because there is no adverse legal interest between the parties.  The Supreme Court has held that in declaratory judgment actions it is crucial that there is an adverse legal interest between the parties that needs judicial resolution, or else the case would fall outside of Article III because the court would be issuing a decree on a hypothetical set of facts.  Based on this requirement, the Federal Circuit and district courts have held that for a declaration of non-infringement, Plaintiffs may only sue a party that can affirmatively sue for patent infringement, *i.e.*, the patent owner or its exclusive licensee, such as SLC, because only the patent owner or licensee can enforce the patent against Plaintiffs.  As a result, assuming *arguendo* that Plaintiffs could establish their alter ego claims, there is still no case or controversy because

ACACIA'S REPLY IN SUPPORT OF MOTION TO DISMISS

LITIOC/2123214v6/101022-0123

controlling case law dictates that ARC cannot reverse pierce its corporate veil to affirmatively sue for patent infringement based upon SLC's patents.  Therefore, a declaration of non-infringement against ARC is an advisory opinion because ARC does not own the patents and cannot sue for infringement, and it cannot as a matter of law sue based upon the patents of a subsidiary.  This issue is dispositive.

Second, the Opposition fails to address that the Complaint contains no well-pled allegation that ARC has undertaken any affirmative conduct to create a case or controversy.  Indeed, the Opposition completely ignores that SLC – not ARC – has filed the other lawsuits.  There simply are no factual allegations suggesting that ARC has ever attempted to enforce the patents against Plaintiffs or anyone else.

Third, the Complaint and new averments in the Opposition fail to establish that SLC is the alter ego of ARC.  Indeed, the Opposition fails to establish that any cognizable fraud or injustice would result if the Court respects the distinct and separate nature of SLC and ARG.  The Opposition completely ignores the type of relief Plaintiffs seek and that a declaration against SLC would provide Plaintiffs with all of the relief they seek.  The Opposition instead suggests that litigating in an "inconvenient" forum amounts to fraud or injustice, but no case law supports this novel theory.  And, neither Plaintiff is a resident in this district nor has employees or its document repositories here; any "inconvenience" is minimal.

The Opposition also asserts insufficient facts to establish a unity of interest and even concedes that Plaintiffs have not alleged the "critical facts" such as inadequate capitalization, commingling of assets, or failure to respect corporate formalities. The Opposition instead asserts unremarkable facts common in many parent-subsidiary relationships, such as interlocking employees and the sharing of office space.  Courts have routinely found such allegations insufficient.

Plaintiffs' requests for both leave to amend and jurisdictional discovery are limited to their alter ego theory, and thus, those requests are futile.  That is because

ACACIA'S REPLY IN SUPPORT OF MOTION TO DISMISS

LITIOC/2123214v6/101022-0123

1  Plaintiffs cannot discover or plead facts to alter the inescapable facts that ARC has

2  no ownership or contractual interest in the patents, and that ARC has never

3  attempted to enforce the patents.  Indeed, the concurrently filed reply and

4  declarations for SLC's separate motion make clear that ARC does not have (and

5  never had) any rights or title to the patents.  Those same declarations also make

6  clear that Plaintiffs' alter ego theory must fail, when considering the legitimate

7  business purposes for the formation and operation of SLC, consistent with Federal

8  Circuit authority, and that ARC and SLC respect the corporate form.

9       Accordingly, ARC respectfully requests that this Court grant its motion and

10  dismiss the Complaint with prejudice.

11  **II.    ARGUMENT[1]**

12      **A.    The Opposition Ignores That There Is No Case Or Controversy**

13           **Between Plaintiffs And ARC For Declaratory Relief.**

14      The Opposition dismisses as irrelevant and fails to address that there is no

15  case or controversy between Plaintiffs and ARC.  (Opp'n at 1.)  It is a

16  constitutional and statutory requirement that there must be a justiciable case or

17  controversy between the parties.  The Declaratory Judgment Act provides in

18  pertinent part:

19

20      In a case of actual controversy within its jurisdiction ... any court of
     the United States, upon the filing of an appropriate pleading, may
21      declare the rights and other legal relations of any interested party
     seeking such declaration, whether or not further relief is or could be
22      sought. Any such declaration shall have the force and effect of a final
     judgment or decree....
23

24

25

26  _____

27  [1] The Opposition suggests that the Motion constitutes a facial attack and therefore the Court must accept all of the complaint's allegations as true, but "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  (Mot. at 5-6 citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).)

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 3 -

ACACIA'S REPLY IN SUPPORT OF MOTION TO DISMISS
LITIOC/2123214v6/101022-0123

(Mot. at 7 citing 28 U.S.C. § 2201(a).)  "[T]he phrase 'case of actual controversy' ... refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III."  (Mot. at 7 citing *MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 126-27 (2007).)  A court's exercise of jurisdiction must resolve a "substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  (Mot. at 7 citing *id*.; *Arris Group Inc. v. British Telecomm. PLC*, 639 F.3d 1368, 1374 (Fed. Cir. 2011).)

The Supreme Court has explained the importance of this requirement for an *actual* case of controversy that can support a declaratory relief claim.  In *MedImmune*, the Court stated:

> [D]ecisions require that the dispute be definite and concrete, touching the legal relations of parties having adverse legal interests . . . and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*MedImmune, Inc.* 549 U.S. at 127 (internal quotations and citations omitted).  An action that does not present an actual case or controversy is not justiciable under Article III.  *See id.* at 127-28.  The Opposition is silent on these issues.  (*See* Opp'n *passim*.)

### 1. The Opposition Ignores That There Is No Adverse Legal Interest Between The Parties.

#### a. Plaintiffs Do Not Dispute That ARC Cannot Sue Plaintiffs For Infringement Because ARC Is Not An Owner Or Licensee Of The Patents.

The Opposition does not dispute that ARC does not own and is not the exclusive licensee for the patents-in-suit, and therefore, there can be no case or controversy.  Indeed, a proper defendant in a declaratory relief action for non-infringement is a party who has standing to sue as a plaintiff in an infringement action.  (Mot. at 7-8.)  Moreover, as detailed in the Motion, if a party lacks

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 4 -

ACACIA'S REPLY IN SUPPORT OF MOTION TO DISMISS

LITIOC/2123214v6/101022-0123

1  standing to sue for patent infringement because it has no legal interest in the

2  patents-in-suit, then there is no case or controversy that would support jurisdiction

3  under either Article III or the Declaratory Judgment Act.  (Mot. at 8.)  Plaintiffs do

4  not attempt to dispute these well-established principles.  (*See* Opp'n *passim*.)

5  There is no allegation in the Complaint that ARC is an owner or licensee of

6  the patents-in-suit.  (Mot. at 8.)  The judicially noticeable records of the U.S.

7  Patent and Trademark Office (the "PTO") demonstrate that SLC is the owner of

8  the patents.  (Mot. at 9 n.3 citing Ram Decl., Ex. 2.)  Plaintiffs' now admit that:

9  "the Complaint pleads that the patents were assigned to SLC."  (Opp'n at 5.)

10  ARC's lack of legal interest in the patents-in-suit is fatal to Plaintiffs' declaratory

11  relief claims.

12         **b.     Plaintiffs Do Not Dispute That A Parent Company Of**

13                  **A Patent Holder Is Not A Proper Defendant For A**

14                  **Declaratory Relief Claim.**

15  The Opposition does not dispute that ARC's mere corporate control of SLC,

16  through stock or equity ownership, does not alter the constitutional and statutory

17  requirements of an actual case or controversy.  In other words, corporate control

18  does not create an adverse legal interest between Plaintiffs and ARC for

19  declaratory relief.  Courts have granted ARC's motions to dismiss in nearly

20  identical declaratory relief actions that involved the same ownership structure.  For

21  example, in *Sony Electronics, Inc. v. Digitech Image Technologies, LLC*, Sony

22  argued that ARC controlled Digitech, and therefore the court had subject matter

23  jurisdiction.  The court noted that "[a]ssuming that is the case, it still does not

24  make any sense to me that although Acacia cannot sue Sony to enforce the patent,

25  Sony can sue Acacia to prevent enforcement of the patent."  (Mot. at 11 citing

26  *Sony Elecs., Inc. v. Digitech Image Techs., LLC*, No. 12-980-RGA (D. Del. Dec.

27  11, 2012); *see also Digitech Image Techs., LLC v. Newegg Inc.*, Case No. 2:12-cv-

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 5 -

ACACIA'S REPLY IN SUPPORT OF MOTION TO DISMISS
LITIOC/2123214v6/101022-0123

01688-ODW (MRWx) 2013 U.S. Dist. LEXIS 63828, at *3 (C.D. Cal. May 3, 2013) (ARC's parent-subsidiary relationship with Digitech did not create any cognizable interest in the patent-in-suit—legal or equitable—and ARC therefore would lack standing to sue Newegg for either legal or equitable relief).)[2]

The Opposition attempts to dodge the import of these decisions by claiming that they are irrelevant. Whether there is a case or controversy under Article III or whether Plaintiffs have stated a claim is not irrelevant. Simply put, even if SLC is ARC's alter ego (which it is not), ARC cannot sue to enforce the patents, and therefore, there is no Article III claim or controversy and no cognizable claim against ARC for declaratory relief.

### 2. The Opposition Ignores That ARC Took No Affirmative Act To Enforce The Patents-In-Suit.

The Opposition does not dispute that Plaintiffs suffered no injury in fact because the Complaint does not allege that ARC engaged in any affirmative conduct to enforce the patents-in-suit. (Mot. at 12 citing *Ass'n for Molecular Pathology v. United States PTO*, 653 F.3d 1329, 1343-48 (Fed. Cir. 2011) ("[T]o establish an injury in fact traceable to the patentee, a declaratory judgment plaintiff must allege both (1) an affirmative act by the patentee related to the enforcement of his patent rights, and (2) meaningful preparation to conduct potentially infringing activity.").)

As detailed in the Motion, SLC – and not ARC – initiated and is prosecuting the lawsuits discussed in the Complaint. (Mot. at 12.)  ARC is not a party to any of those lawsuits. (Mot. at 4.)  The Opposition does not dispute these facts. (*See* Opp'n *passim.*)

---

[2] Plaintiffs attempt to distinguish this case merely by noting that no alter ego allegations were involved in the underlying litigation. (Opp'n at 4.)  As discussed in Section II(B) *infra,* Plaintiffs' alter ego theory is irrelevant.

The Opposition also abandons the Complaint's misleading allegations.  For example, the Complaint wrongly alleges that "Acacia Research has also taken legal action against HTC mobile handsets by, among other things, seeking to enjoin their sale and use through the German Litigations."  (Mot. at 12 (quoting Compl. ¶ 15).)  Plaintiffs have now walked away from that misleading allegation.  Similarly, the Opposition does not and cannot dispute that SLC – not ARC – filed the Texas lawsuits against Samsung and LG despite allegations to the contrary in the Complaint.  (Mot. at 12-13 (citing Compl. ¶¶ 18-19); *see* Opp'n *passim*.)

As a result, the Opposition concedes that there are no facts to suggest that ARC ever attempted to enforce the patents-in-suit against Plaintiffs to warrant declaratory relief.  ARC's lack of any affirmative conduct precludes a claim against ARC.  (Mot. at 13 citing authority.)

**B.    Plaintiffs' Alter Ego Theory Does Not Create A Case Or Controversy For Declaratory Relief.**

The Motion establishes that even if Plaintiffs can prevail on their alter ego claims (which they cannot), the Complaint against ARC should still be dismissed because a parent company cannot bring a suit for patent infringement by virtue of an alter ego relationship with its patent holding subsidiary (*i.e.*, a theory of reverse piercing of the corporate veil).  (Mot. at 22-23.)  Despite an entire section of the Motion dedicated to this issue, Plaintiffs claim in the Opposition that "ARC does not appear to dispute that if the separation between ARC and SLC can be legally disregarded – for example because SLC and ARC are alter egos of each other – subject matter jurisdiction would properly lie over ARC."  (Opp'n at 4, *see also id.* at 1.)  This representation is demonstrably false.

First, as stated previously, a proper defendant in a declaratory relief action for non-infringement is a party who has standing to sue as a plaintiff in an infringement action.  That is – a party who actually owns or has a contract creating

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

ACACIA'S REPLY IN SUPPORT OF MOTION TO DISMISS
LITIOC/2123214v6/101022-0123

an exclusive license for the patents.  Plaintiffs offer no opposition to this well-established principle.  (*See* Opp'n *passim*.)

A shareholder or parent company does not own or have any contractual interest in the assets of its subsidiary.  (Mot. at 10-11.)  As a related principle, the corporate veil can only be pierced by an adversary of the corporation and not the corporation itself.  (Mot. at 22 citing, e.g., *Disenos Artisticos, E. Industriales, S.A. v. Costco Wholesale Corp.*, 97 F.3d  377, 380 (9th Cir. 1996).)

The recent Seventh Circuit decision in *Motorola Mobility LLC v. AU Optronics Corp.,* 775 F.3d 816, 819-20 (7th Cir. 2014), is instructive.  (Mot. at 22-23.)  The court held that the parent company Motorola could not pursue a Sherman Act claim on behalf of its subsidiaries who suffered the actual damages in a price fixing scheme.  775 F.3d at 819-20.   The court stated that "Motorola wants us to treat it and all of its foreign subsidiaries as a single integrated enterprise, as if its subsidiaries were divisions rather than foreign corporations.  But American law does not collapse parents and subsidiaries (or sister corporations) in that way."  *Id.*

Similarly, the court in *Quantum Corp. v. Riverbed Technologies Inc.*, No. C-07-04161 WHA, 2008 U.S. Dist. LEXIS 11348 (N.D. Cal. Feb. 4, 2008), held that once a party avails itself of the benefits of the corporate form, it also bears the associated burdens and cannot disregard them.  (Mot. at 23.)  There, the parent company argued that it had effectively assigned its subsidiaries patents to another company because the subsidiary was its alter ego.  2008 U.S. Dist. LEXIS 11348, at *5-8.  The court disagreed and held that the parents equitable ownership of the subsidiary did not mean it could unilaterally transfer the subsidiaries' assets.  *Id.* Put simply, the court held that the parent could not pierce its own corporate veil for its own interest.

Plaintiffs make no attempt to address, let alone counter, this authority cited in the moving papers.  (*See* Opp'n *passim*.)  ARC has not attempted to enforce the

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 8 -

ACACIA'S REPLY IN SUPPORT OF MOTION TO DISMISS
LITIOC/2123214v6/101022-0123

1   patents against Plaintiffs and could not do so even if it tried.  ARC cannot pierce its

2   corporate veil for its own benefit, *i.e.*, to bring a patent infringement suit against

3   Plaintiffs based upon SLC's ownership of the patents-in-suit.  As a result, even if

4   Plaintiffs can establish an alter ego relationship, there is still no Article III or

5   Declaratory Judgment case or controversy between Plaintiffs and ARC.  (Mot. at

6   7-8 string citing cases.)

7        ARC's presence in the action provides no additional relief and no further

8   redress for Plaintiffs.  That is because the prayed for declaration against ARC

9   would be meaningless and amount to nothing more than an advisory opinion

10   because ARC is not attempting to enforce and cannot enforce the patents against

11   Plaintiffs as a matter of law.

12        <u>Second</u>, the cases cited in the Opposition are inapposite.  The Opposition

13   primarily relies on *Dainippon Screen Manufacturing. Co. v. CFMT, Inc.*, 142 F.3d

14   1266 (Fed. Cir. 1998), for the proposition that "assigning patents to an out-of-state

15   holding company to avoid declaratory judgment actions in the parent's home

16   forum – warrants disregarding the separateness of the parent and subsidiary

17   companies."  (Opp'n at 5.)  However, *Dainippon* does *not* involve a challenge to

18   subject matter jurisdiction under Rule 12(b)(1) or the failure to state a claim for

19   declaratory relief under Rule 12(b)(6) – the grounds for ARC's motion.  *Dainippon*

20   also does *not* involve an alter ego theory – Plaintiffs' theory.  Instead, the decision

21   considered whether a court had personal jurisdiction over a subsidiary under a

22   traditional minimum contacts analysis.  Therefore, *Dainippon* is irrelevant.

23        Dainippon also is distinguishable on the facts relating to parent-subsidiary

24   relationship in that case.  In *Dainippon*, a parent manufacturing company, CFM,

25   assigned all of its intellectual property to its subsidiary holding company CFMT.

26   *Dainippon Screen Mfg. Co.*, 142 F.3d at 1268.  CFMT then licensed the patents

27   back to CFM, but retained the sole right to negotiate new licenses and initiate

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 9 -

ACACIA'S REPLY IN SUPPORT OF MOTION TO DISMISS
LITIOC/2123214v6/101022-0123

enforcement litigation. *Id.* CFM subsequently used the licensed patent to manufacture and sell semiconductors. *Id.* CFM learned that Dainippon might be infringing its patents and conducted negotiations and continually threatened suit to enforce those patents. *Id.* Dainippon subsequently brought a declaratory judgment action for non-infringement against CFM and CFMT. *Id.* CFMT moved to dismiss for lack of personal jurisdiction. *Id.* The district court agreed and dismissed CFMT and then dismissed CFM because it determined CFMT was an indispensable party. *Id.* at 1269. The Federal Circuit reversed and found that CFMT had sufficient minimum contacts to warrant personal jurisdiction because CFMT had licensed the patent to CFM to sell products that practiced the patent in California and collected royalties from those California sales, issued threats to sue in California, and attempted to negotiate a sublicense with the plaintiff in California. *Id.* at 1270-71. The Court also found that CFMT was not an indispensable party. *Id.* at 1273.

Unlike CFM, there is *no* allegation that ARC has ever owned the patents, ever had a license or any contract rights for the patents, ever used the patents, or ever attempted to enforce the patents. (*See* Compl. *passim*; *see* Opp'n *passim*; Mot. at 7-13, Section II(A) *infra*.) Indeed, many courts have recognized that *Dainippon's* holding is limited to the particular situation where a parent company transfers its patents to a subsidiary and then receives a license to continue to exploit the patents, and that *Dainippon*'s discussion of fairness in exercising personal jurisdiction is dicta. *See, e.g., Simmons Bedding Co. v. Leggett & Platt, Inc.,* 2012 U.S. Dist. LEXIS 190592, at *12-14 (W.D. Wis. Mar. 27, 2012) (in *Dainippan* the court held that "the subsidiary had established minimum contacts by sending infringement letters into the forum state and licensing a competitor and distributor to sell patented products in the forum state," and "[g]iven that the court had already found sufficient minimum contacts attributable directly to the

ACACIA'S REPLY IN SUPPORT OF MOTION TO DISMISS

LITIOC/2123214v6/101022-0123

1    subsidiary, this broad statement -- as to the fairness of exercising personal

2    jurisdiction over a wholly-owned subsidiary based on the conduct of its parent

3    company -- is arguably no more than dicta");  *Seaflex, Inc. v. Fall Prot. Sys.*, 2007

4    U.S. Dist. LEXIS 99292, *9-10 (S.D. Tex. Nov. 20, 2007) ("Dainippon is a case

5    involving a somewhat unique set of facts, and the intimate relationship between the

6    licensee and licensor in that case clearly played a role in the Circuit's decision that

7    jurisdiction over the out-of-state patent holding company was reasonable and fair.

8    Nonetheless, the Circuit in Dainnipon addressed the question of whether

9    jurisdiction was 'reasonable and fair' *only after determining that the out-of-state*

10   *company had, in fact, established minimum contacts with the forum state)*

11   (emphasis added).  As a result, *Dainippon* has no applicable here.[3]

12        Plaintiffs also argue that alter ego can be a basis for disregarding the

13   separation between SLC and ARC and establishing subject matter jurisdiction.

14   (Opp'n at 7.)  To support their contention, Plaintiffs cite *Electro Source, LLC v.*

15   *Nyko Technologies, Inc.*, No. CV 01-10825 DT (BQRx), 2002 U.S. Dist. LEXIS

16   28436 (C.D. Cal. Apr. 15, 2002).  In *Electro Source*, however, the district court

17   found that the declaratory judgment defendants were deliberating "hiding the ball."

18   2002 U.S. Dist. LEXIS 28436, at *29-30.  The district court found that each

19   company was claiming that it did not own the patent-in-suit at various times to

20   avoid liability, and committing fraud on the PTO.  *Id.* at *29-30.  Essentially, the

21   declaratory relief defendants made it impossible to discern which one had a legal

22   interest in the patents.  In the instant matter, however, Plaintiffs, ARC, and SLC all

23   acknowledge that SLC is the owner of the patents-in-suit, and ARC has never

24   contended otherwise.  (Opp'n at 5, Mot. at 7-8, SLC Mot. at 3.)

25        Perhaps more importantly, the Opposition does not even try to suggest that

26   *Dainnipon* or *Electrosource* refute that ARC still does not have standing to enforce

27   ────────────────────

28   [3] Plaintiffs make no contention in the Opposition or allegation in the Complaint
     that ARC is an indispensable party.  (*See* Opp'n *passim*; *see* Compl. *passim*.)

- 11 -

the patents-in-suit.  As a result, the Court does not have subject matter jurisdiction because there is no case or controversy between the parties.

C.   **The Complaint And Plaintiffs' New Purported Facts Do Not Establish That There Is An Alter Ego Relationship Between SLC And ARC.**

Although an alter ego relationship has no bearing on whether there is a case or controversy between the parties, Plaintiffs still cannot establish an alter ego relationship between SLC and ARC.[4]  First, Plaintiffs do not assert any facts remotely sufficient to establish that any fraud or injustice would occur should SLC not be found to be an alter ego of ARC.  Second, Plaintiffs do not assert any facts sufficient to establish that there is a unity of interest between SLC and ARC.

1.   **The Opposition Does Not Establish That A Fraud Or Injustice Would Occur Should SLC Not Be Found To Be An Alter Ego Of ARC.**

The Opposition does not establish that a fraud or injustice would occur should the Court continue to recognize that ARC and SLC are separate and distinct companies.  In *Sonora Diamond*, the court explained the reasoning behind the fraud or injustice prong, stating that "[t]he alter ego doctrine does not guard every unsatisfied creditor of a corporation but instead affords protection where some conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form."  (Mot. at 19 citing 83 Cal. App. 4th at 537.)  Indeed, courts have found that "[U]nder California law the kind of inequitable result that makes alter ego liability appropriate is an abuse of the corporate form, such as under-capitalization or misrepresentation of the corporate form to creditors."  *Firstmark Capital Corp. v. Hempel Financial Corp.*, 859 F.2d 92, 94 (9th Cir. 1988) (citations omitted).  Moreover, there can be no fraud or injustice

---

[4] As noted in the Motion, the alter ego issue should be decided under Ninth Circuit precedent.  (Mot. at 14 n.8.)

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

ACACIA'S REPLY IN SUPPORT OF MOTION TO DISMISS

LITIOC/2123214v6/101022-0123

where a plaintiff is not harmed by recognition of separate corporate identities. (Mot. at 19 citing *Mid-Century Ins. Co. v. Gardner*, 9 Cal. App. 4th 1205 (1992).)

Here, Plaintiffs will not be harmed by recognition of separate corporate identities. Plaintiffs do not dispute that SLC can "satisfy" any potential declaration because SLC would be bound by a judgment that Plaintiffs' products do not infringe the patents-in-suit. (Mot. at 20; *see* Opp'n *passim*.) That judgment essentially runs with the patents-in-suit. Indeed, Plaintiffs admit that they are not "seeking money damages against ARC," so there is nothing that SLC cannot substantively satisfy. (Opp'n at 8.) ARC's presence in the suit adds nothing.

Instead of establishing an actual fraud or injustice, the Opposition baldly asserts that the "manipulation of venue and jurisdiction is an abuse of the judicial process." (Opp'n at 11.) This just repeats the Complaint's conclusory allegation that is insufficient under Rule 8. Beyond that, as ARC represented in the Motion, "ARC is aware of no case ever holding that depriving Plaintiffs of their preferred forum amounts to fraud or injustice that could support an alter ego determination." (Mot. at 20-21.) Plaintiffs do not offer one case that supports their novel theory. (*See* Opp'n *passim*.) There is no case for good reason. In *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995), the court explained that in analogous situation of alter ego to establish personal jurisdiction, "disregarding the corporate entity is recognized as an extreme remedy" and "courts hold plaintiffs who invoke the alter ego theory of personal jurisdiction to a slightly higher burden." (Mot. at 12.)

More fundamentally, ARC is not manipulating jurisdiction and has not committed any fraud or injustice. At most, Plaintiffs will have an inconvenience of litigating their declaratory relief claims in another judicial district. Even then, that inconvenience appears minimal because Plaintiffs are not residents in this district or even California, they do not have any employees or document repositories here.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 13 -

ACACIA'S REPLY IN SUPPORT OF MOTION TO DISMISS

LITIOC/2123214v6/101022-0123

1   (*See* Declaration of Stephanie Bariault ("Bariault Decl.") [Dkt. No. 27-1] ¶¶ 5-8,

2   11.)[5]

3          As Plaintiffs' own cited case *Dainippon* recognizes, "a patent holding

4   subsidiary is a legitimate creature and may provide certain business advantages."

5   142 F.3d at 1271.  Establishing separate corporate entities to hold particular assets

6   or operate particular businesses is commonplace across many industries.[6]  *See, e.g.*

7   *United States v. Bestfoods*, 524 U.S. 51, 52 (1998) (using subsidiaries to conduct

8   business in the hazardous waste industry); *Doe v. Unocal Corp*., 248 F.3d 915, 920

9   (9th Cir. 2001) (using subsidiaries to conduct business in the energy industry);

10  *Katzir's,* 394 F.3d at 1147 (using subsidiary to conduct business in the carpentry

11  industry); *Slottow v. Am. Cas. Co.*, 10 F.3d 1355, 1360 (9th Cir. 1993) (using

12  subsidiary to conduct business in the banking industry); *Yellow Pages.com, LLC*,

13  780 F. Supp. 2d 1028, 1030 (S.D. Cal. 2011) (using subsidiary to conduct business

14  in the telecommunications industry);  *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1036

15  (N.D. Cal. 2014) (using subsidiaries to conduct business in the automotive

16  industry); *Gerritsen v. Warner Bros. Entm't*, No. CV 14-03305 MMM (CWx),

17  2015 U.S. Dist. LEXIS 84979, at *75 (C.D. Cal. June 12, 2015) (using subsidiaries

18  to conduct business in the entertainment industry); *Cherrone v. Florsheim Dev*.,

19  Civ. No. 2:12-02069 WBS CKD, 2012 U.S. Dist. LEXIS 172778, at *11 (E.D. Cal.

20

21  [5] Plaintiffs claim, on the one hand, that "some industrial and user interface design
    also [is] done by HTC subsidiaries in Washington and California," but Plaintiffs
22  then reveal that their employees or possible party witnesses are located in
    Washington and Taiwan.  (*Compare* Bariault Decl. [Dkt. No. 27-1] ¶ 5 *with id.* ¶¶
23  8, 11.)

24  [6] Undisputed from the moving papers, HTC has formed and operates a
    considerable number of its own subsidiaries in different jurisdictions.  (*See* Mot. at
25  18 n. 12 citing Ram Decl., Ex. 9 at 143.)  These companies resemble the
    Complaint's allegations, including the new assertions regarding consolidated
26  revenue reporting.  (*See* Ram Decl., Ex. 9 at 55, 61-63, ¶51.)  Ultimately,
    Plaintiffs' theory proves too much – any parent-subsidiary sharing employees or
27  administrative functions would become an alter ego – that would transform the rare
    remedy of alter ego into the norm upsetting the established principles of corporate
28  law.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 14 -

ACACIA'S REPLY IN SUPPORT OF MOTION TO DISMISS

LITIOC/2123214v6/101022-0123

Dec. 4, 2012) (using subsidiary to conduct business in the real estate industry); *Nucal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 992-95 (E.D. Cal. 2012) (using subsidiary to conduct business in the food industry); *Sonora Diamond Corp.*, 83 Cal. App. 4th at 529 (using subsidiary to conduct business in the mining industry); *Veterinary Pathology, Inc. v. Cal. Health Lab., Inc.*, 116 Cal. App. 3d 111, 119 (1981) (using subsidiaries to conduct business in the pharmaceutical industry).

### 2. The Opposition Does Not Establish A Unity Of Interest.

The Opposition admits that the critical unity of interest factors are not alleged in the Complaint and cannot be alleged. (Opp'n at 8.) The Ninth Circuit unambiguously has found that the "critical facts" for alter ego liability include: "inadequate capitalization, commingling of assets, [or] disregard of corporate formalities." (Mot. at 16 citing *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004) (citing *Tomaselli v. Transamerica Ins. Co*., 25 Cal. App. 4th 1269 (1994)).) Without citing to any precedent, the Opposition asserts that these factors "have considerably less relevance in the context of a patent-holding subsidiary suit." (Opp'n at 8.) That assertion is not supported by *Katzir's* or any other case cite by ARC or Plaintiffs. (*See* Mot. at 16.) Indeed, Plaintiffs provide no reasoning to support their assertion.

Instead of discussing the "critical facts," the Opposition simply repeats the same insufficient allegations from the Complaint without addressing the controlling authority and the considerable weight of persuasive authority rejecting the same assertions. (Opp'n at 8-10.) For example, Plaintiffs assert that ARC and SLC have a common office and website.[7] (Opp'n at 9-10.) As detailed in the Motion, courts have held that shared office space and websites are unremarkable

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 15 -
ACACIA'S REPLY IN SUPPORT OF MOTION TO DISMISS
LITIOC/2123214v6/101022-0123

1   and common in parent-subsidiary relationships.[8]  (Mot. at 17 citing *Gerritsen*,

2   2015 U.S. Dist. LEXIS 84979, at *77 ("[T]he fact that a parent and subsidiary

3   share the same office location, or the same website and telephone number, does not

4   necessarily reflect an abuse of the corporate form and existence of an alter ego

5   relationship."); *NetApp, Inc.*, 2015 U.S. Dist. LEXIS 11406, at *25 ("[T]he

6   allegation that Nimble and Nimble AUS share a website and email is an

7   administrative[ ] function.  Shared administrative functions are not necessarily

8   indicative of an alter ego relationship.") (citation omitted); *see MMI, Inc. v. Baja,*

9   *Inc.*, 743 F. Supp. 2d 1101, 1111 (D. Ariz. 2010); *Cherrone v. Florsheim Dev.*,

10   Civ. No. 2:12-02069 WBS CKD, 2012 U.S. Dist. LEXIS 172778, at *11 (E.D. Cal.

11   Dec. 4, 2012); *Sonora Diamond*, 83 Cal. App. 4th at 539; *Inst. of Veterinary*

12   *Pathology, Inc.*, 116 Cal. App. 3d at 119.)  The Opposition offers no rebuttal or

13   even attempt to address the allegations in the context of the undisputed law.  (*See*

14   Opp'n *passim*.)

15        The Opposition also asserts that SLC and ARC have common employees.

16   However, numerous courts, including the Supreme Court, have recognized that it is

17   entirely appropriate and expected for a parent company's officers and directors to

18   serve as officers and directors of its subsidiary, "and that fact alone may not serve

19   to expose the parent corporation to liability for its subsidiary's acts."  (Mot. at 17

20   citing *Bestfoods,* 524 U.S. at 69 (finding it is "normal" for a parent and a

21   subsidiary to have identical officers and for them to wear dual "hats" when

22   working for the parent or subsidiary company) (citation omitted); *see*, *e.g.*,

23   *Gerritsen,* 2015 U.S. Dist. LEXIS 84979, at *76 ("Overlap between a parent's and

24   a subsidiary's directors or executive leadership alone, however, is not suggestive of

25   a unity of interest"); *NetApp, Inc.*, 2015 U.S. Dist. LEXIS 11406, at *21-22

26

27

28

_____

[8] The Opposition attempts to distinguish the supporting cases by making the unsupported assertion that the cases "involved more traditional and legitimate use of subsidiary companies."  (Opp'n at 10.)  The unsupported assertion has no foundation in law or fact.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 16 -

ACACIA'S REPLY IN SUPPORT OF MOTION TO DISMISS
LITIOC/2123214v6/101022-0123

(same); *Sonora Diamond*, 83 Cal. App. 4th at 548-49 ("It is considered a normal attribute of ownership that officers and directors of the parent serve as officers and directors of the subsidiary.") (citation omitted).)  Again, the Opposition makes no effort to address any of this controlling authority.  (*See* Opp'n *passim*.)

The Opposition now asserts that e-mail communications of Acacia Research Group employees provided in SLC's motion somehow suggest that SLC "is a mere shell and conduit for the affairs of ARC."  (Opp'n at 12.)  As an initial matter, Plaintiffs fail to address their allegations of an overlap of employees between a parent and subsidiary have any more import than the allegations rejected in *Bestfoods* or the weight of authority cited in the moving papers.   Significantly, the e-mail communications themselves never reflect once that either employee stated that they purported to negotiate with Plaintiffs' representatives on behalf of ARC, *i.e.*, that ARC attempted to disregard the distinction between the companies.  (*See* Declaration of Cristin A. Wagner, Exs. E & F (Dkt. No. 16-2, 16-7, 16-8); *see also* Dkt. No. 24.)

Finally, the Opposition asserts the new averment that SLC and ARC have consolidated financial reporting and that somehow means "revenue is eventually siphoned off by ARC for its own operations and claimed as part of its own revenue."  (Opp'n at 13.)  The speculation is mistaken.  Plaintiffs offer only a hearsay footnote from an online article by someone known as "IP Hawk."  (Opp'n at 13 n.5; *see* Declaration of Priya B. Viswanath, Ex. Q [Dkt. No. 27-19].)  More fundamentally, Plaintiffs ignore that ARC is a publicly held company.  Under SEC rules, a public company with subsidiaries must generally report financial results on a consolidated basis.  17 C.F.R. § 210.3A-02; *see also* 17 C.F.R. § 210.3-01, 02; (Mot. at 21 citing *Nucal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 992-95 (E.D. Cal. 2012)).

As a result, Plaintiffs have not established that there is a unity of interest.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 17 -

ACACIA'S REPLY IN SUPPORT OF MOTION TO DISMISS
LITIOC/2123214v6/101022-0123

**D.   Any Jurisdictional Discovery Or Leave To Amend Will Be Futile.**

Plaintiffs make a conclusory prayer for jurisdictional discovery and leave to amend suggesting that they might be able to plead new or different facts to support their alter ego theory.[9]  (Opp'n at 13-14.)  However, for the reasons set forth above, even if Plaintiffs could satisfy the elements of an alter ego claim, Plaintiffs still would not establish an actual case or controversy against ARC to satisfy Article III and the elements for a Declaratory Judgment claim.  Plaintiffs cannot escape that ARC has not ever attempted to enforce the patents-in-suit and it never could do so against Plaintiffs under established law, and that renders the prayed for declaration of non-infringement against ARC nothing more than an improper, advisory opinion.  (*See* Section II(C).)  Even if an alter ego theory was constitutionally and statutorily viable for declaratory relief, Plaintiffs still cannot satisfy the fraud or injustice element.   (*See* Section II(C)(1).)  The inability to cure these defects is fatal to its prayer for jurisdictional discovery and leave to amend. (*See* Mot. at 24-25.)

However, the declarations concurrently filed for SLC's reply further demonstrate the futility of discovery and any amendment for the "critical facts." For example, the evidence demonstrates that SLC is adequately capitalized with over $20,000,000, which is adequate working capital to satisfy its obligations. (Declaration of Clayton Haynes ("Haynes Decl.") ¶ 20; Declaration of Marvin Key ("Key Decl.") ¶ 6[Dkt. No. 16-9].)  The evidence further demonstrates there is no commingling of assets.  ARC and SLC each have their own bank accounts. (Haynes Decl. ¶ 19; *see also* Key Decl. ¶ 6.)  While ARC uses consolidated

---

[9] In passing, Plaintiffs state that they requested jurisdictional discovery, but were unable to reach an agreement with ARC and SLC before filing their oppositions. (Opp'n at 14 n.6.)  Plaintiffs fail to mention that ARC and SLC agreed to a two-week extension that Plaintiffs' requested for their oppositions, and ARC and SLC proposed dates to meet and confer over proposed jurisdictional discovery. Plaintiffs chose to file their oppositions rather than enter into a briefing schedule they agreed to in principle and meet and confer on the discovery.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

ACACIA'S REPLY IN SUPPORT OF MOTION TO DISMISS

LITIOC/2123214v6/101022-0123

financial reporting to fulfill its duties under SEC regulations, the revenues of its subsidiaries, such as SLC, remain the revenues or assets of that subsidiary. (Haynes Decl. ¶¶ 12, 21.) ARC and SLC also respect the corporate formalities required of them by their laws of the state of their organization and their own organizational documents. ARC and SLC each have duly elected officers and directors, hold meetings of their board of directors, and maintain their own separate books and records. (Haynes Decl. ¶¶ 7, 10.)

To clarify the record regarding the pre-suit settlement discussions involving Cristin Wagner and David Rosmann, both Ms. Wagner and Mr. Rosmann made clear to Plaintiffs' representatives from the start that they were negotiating on behalf of SLC, not ARC. (Declaration of Cristin A. Wagner ("Wagner Reply Decl.") ¶ 5; Declaration of David Rosmann ("Rosmann Decl.") ¶ 5.) Ms. Wagner and Mr. Rosmann used their Acacia e-mail addresses out of convenience and nothing more. (Wagner Reply Decl. ¶ 7; Rosmann Decl. ¶ 7.) Because Ms. Wagner and Mr. Rosmann were involved in the negotiations with Plaintiffs' representative on behalf of SLC, both individuals recorded their time spent on providing those services and SLC is responsible for paying for those services pursuant to an employment services agreement. (Wagner Reply Decl. ¶ 4; Rosmann Decl. ¶ 4; Haynes Decl. ¶ 15 & Ex. 11.)

Moreover, as Clayton Haynes, the Chief Financial Officer of ARC and SLC explains, subsidiaries such as SLC have legitimate business purposes for ARC, its inventor partners and other stakeholders. (Declaration of Clayton Haynes ("Haynes Decl.") ¶ 14.) VoiceAge, the prior patent holder, has a contractual right to receive royalties in connection with licensing efforts. (*Id.* 12.) Forming a separate company, here SLC, to bear this responsibility along with other contractual duties enables efficient and streamlined accounting corresponding to the licensing activities of VoiceAge's prior patents to ensure that VoiceAge

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 19 -

ACACIA'S REPLY IN SUPPORT OF MOTION TO DISMISS

LITIOC/2123214v6/101022-0123

1   receives royalties due. (*Id.* 12.)  The separate subsidiaries for distinct patent

2   portfolios also serves to minimize risk for inventor partners, such as VoiceAge,

3   and other stakeholders from obligations arising from wholly separate patents from

4   another inventor partner.   Not only does SLC possess the patents from VoiceAge,

5   it has significant funds in its own bank account for its operating capital.  (*Id.* ¶ 20.)

6   SLC is hardly an empty shell formed to manipulate jurisdiction.

7   **III.    CONCLUSION**

8           For the foregoing reasons, Acacia Research Corporation respectfully

9   requests that the Court dismiss the Complaint with prejudice.

10

11                                    Respectfully submitted,

12  Dated:  August 31, 2015          STRADLING YOCCA CARLSON & RAUTH, P.C.

13                                    By:  */s/ Stephen L. Ram*
                                          _____
14                                        Marc J. Schneider
                                          Stephen L. Ram
15                                        Ryan W. Smith
                                          Jessica L. Mullen
16                                        Attorneys for Defendant
                                          ACACIA RESEARCH CORPORATION

17

18

19

20

21

22

23

24

25

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 20 -
ACACIA'S REPLY IN SUPPORT OF MOTION TO DISMISS
LITIOC/2123214v6/101022-0123

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that:  I am employed by Stradling Yocca Carlson & Rauth in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action.  My business address is: 660 Newport Center Drive, Suite 1600, Newport Beach, CA  92660-6422.  My email address is kolson@sycr.com.

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's ECF System on the 31st day of August, 2015.

Kim Olson

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

1

ACACIA'S REPLY IN SUPPORT OF MOTION TO DISMISS

LITIOC/2123214v6/101022-0123