# JS-6

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

|  |  |
|---|---|
| HTC CORPORATION; HTC AMERICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ACACIA RESEARCH CORPORATION; SAINT LAWRENCE COMMUNICATIONS LLC, <br><br> Defendants. | Case No.: SACV 15-00378-CJC(DFMx) <br><br><br> **ORDER GRANTING DEFENDANT SAINT LAWRENCE COMMUNICATIONS LLC'S MOTION TO TRANSFER AND DENYING DEFENDANTS' MOTIONS TO DISMISS** |

## I. INTRODUCTION

Plaintiffs in this patent-related declaratory judgment action, HTC Corporation and HTC America, Inc. (collectively HTC), bring suit against defendant patent holder Saint Lawrence Communications LLC (SLC), and its parent company Acacia Research

Corporation (ARC), asserting a need to establish whether HTC-designed and

manufactured mobile phones violate five voice-technology-related patents held by SLC.

ARC moved to dismiss on the basis that there is no case or controversy between it

and HTC, as ARC itself is not the owner of any of the patents at issue.  SLC separately

moved to dismiss because this Court does not have personal jurisdiction over it, or, in the

alternative, because HTC's declaratory judgment suit against it was an improper use of

the Declaratory Judgment Act.  SLC further argues that should HTC's suit against it not

be dismissed, this Court should transfer the case to the Eastern District of Texas, where it

can be heard by the Honorable Rodney Gilstrap, who is presiding over several actions

SLC has brought to enforce the patents at issue here, including SLC's enforcement action

against HTC.

For the following reasons, the Court GRANTS SLC's motion to transfer this case

to the Eastern District of Texas, and DENIES the defendants' motions to dismiss, without

prejudice to renewal before the Texas Court.[1]

## II.  BACKGROUND

ARC is in the business of acquiring patents from third parties and enforcing them

against operating companies.  It maintains its headquarters in Newport Beach, California,

in this judicial district.  (Dkt. 1, Compl. ¶ 4.)  ARC performs its day-to-day business

through its wholly-owned "primary operating subsidiary," Acacia Research Group LLC

(ARG).  (Dkt. 14-2, Acacia Form 10-K at 19.)  ARG asserts that its headquarters are in

Plano, Texas.  (Dkt. 27-3, Decl. of Mervin Key ¶ 4.)  It also maintains offices at ARC's

---

[1]  Having read and considered the papers presented by the parties, the Court finds this matter appropriate
for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set
for September 14, 2015 at 1:30 p.m. is hereby vacated and off calendar.

headquarters in Newport Beach.  (*Id.* ¶ 7.)  ARC and ARG have created multiple patent holding companies that hold titled to the patents Acacia seeks to license.  (Dkt. 14-2, Acacia Form 10-K, at 8-9.)  SLC, one such company, is a wholly-owned subsidiary of ARG.  (Dkt. 16-9, Key Decl. ¶ 5.)  SLC's CEO, Marvin Key, has declared that SLC is a Texas LLC located in Plano, and that it has no officers, property, bank accounts, telephone listings, or mailing addresses in California.  (*Id.* ¶ 2.)

HTC Corporation is organized under the laws of Taiwan, with its corporate headquarters located in New Taipei City, Taiwan.  (Compl. ¶ 2.)  HTC America is a Washington corporation headquartered in Bellevue, Washington.  (*Id.* ¶ 3.)  HTC manufactures, imports, markets, and sells mobile phones.

SLC owns multiple patents for technology developed by VoiceAge Corporation, a company that develops speech and audio compression technologies.  (Compl. ¶ 14.) These patents include the five patents at issue here, which relate to speech technology and are known by the commercial name HD Voice.  (Dkt. 16-9, Key Decl. ¶ 7.)  SLC alleges that HTC's phones contain this patented HD Voice technology.

On December 9, 2014, HTC sent SLC's German subsidiary a letter requesting that the parties enter into negotiations for a patent license for SLC's HD Voice technology. (Dkt. 16-3, Wagner Decl. Ex. A.)  HTC's letter noted that SLC had brought patent litigation against two German phone companies that used HTC devices, Telekom Deutschland GmbH and Vodaphone GmbH, and expressed its "concern" about "the effect that the litigations may have on its ability to sell devices to end users."  (*Id.*)  SLC responded on December 22, 2014, noting that it had "doubts about HTC's willingness to enter into a licensing agreement" based on HTC's apparent willingness to enter into negotiations only with regard to SLC's patents at issue in the German litigation, as opposed to patents relevant to HTC's activities in other parts of the world.  (Dkt. 16-4,

Wagner Decl. Ex B.)  The parties signed a non-disclosure agreement and entered into
negotiations pertaining to the patent.  (Dkt. 16-5, Wagner Decl. Ex. C.)

On January 23, 2015, representatives of SLC and HTC met in Tokyo to conduct
negotiations concerning the licensing of SLC's patent.  (Dkt. 16-1, Anaipakos Decl. ¶ 2.)
SLC had already filed a patent infringement suit against Samsung in the Eastern District
of Texas in April 2014, and another suit against LG Electronics in the same district in
November 2014.  (*Id.* ¶ 3.)  Later, in March 2015, SLC filed one suit against ZTE
Corporation and ZTE USA, Inc., and another against Motorola Mobility, both also in the
Eastern District of Texas.  (*Id.*)  The suits against Samsung, LG, ZTE, and Motorola all
pertain to the same patents that are at issue here.  (*Id.*)  The LG, ZTE, and Motorola suits
remain pending, and are all before Judge Gilstrap.  SLC avers that the only reason it did
not file suit against HTC in that district at that time was because of HTC's continuing
promises that it was interested in negotiating a good-faith settlement.  (*Id.* ¶ 4.)

During March 2015, HTC and SLC continued to correspond about licensing
agreements for Germany and for other regions.  (Dkt. 16-7, Wagner Decl. Ex. E.)
Though the parties were in ongoing negotiations, on March 9, HTC also filed a
declaratory judgment action against SLC and ARC in this Court.  HTC did not serve the
defendants, and made no mention of the lawsuit as the negotiations continued later in
March.  (Dkt. 16-2, Wagner Decl. ¶ 9.)  The parties exchanged more than a dozen
additional communications through May 2015, but HTC did not indicate in any of them
that it had filed a declaratory judgment action against SLC.  (*Id.* ¶ 11.)  In May, SLC
determined that further negotiations were futile.  (*Id.* ¶ 12.)  On June 2, SLC filed a
substantive patent infringement action against HTC in the Eastern District of Texas and
served HTC the following day.  (*Id.*)  Two weeks after being served with that Texas
complaint, and over 100 days after its declaratory judgment suit was filed, HTC served
SLC with the complaint in the instant declaratory judgment action.  (*Id.* ¶ 13.)

SLC's Texas cases are moving forward.  In the LG case, the parties have identified over 100 proposed terms for construction from the five asserted patents, exchanged preliminary claim constructions for those terms, and filed their Joint Claim Construction Statement with the Court.  (Anaipakos Decl. ¶¶ 5-7.)  A claim construction hearing date has been set for October 9, 2015.  (*Id.* ¶ 6.)  Judge Gilstrap has also appointed a technical advisor to assist with claim construction, assigned a mediator, and set a trial date for April 11, 2016.  (*Id.*)  That Court consolidated the cases involving ZTE and Motorola Mobility, and conducted a scheduling conference in July that set a claim construction hearing for January 6, 2016 and a trial date on July 11, 2016.  (*Id.* ¶ 7.)

## III.  LEGAL STANDARD

SLC has moved to transfer this action to the Eastern District of Texas under 28 U.S.C. § 1404(a), which states that "[f]or the convenience of parties and witnesses, in the interest of justice a district court may transfer any civil action to any other district or division where it might have been brought."  Section 1404(a)'s purpose is to "prevent the waste 'of time, energy, and money' and to 'protect litigants, witnesses and the public against unnecessary inconvenience and expense.'"  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Continental Grain Co. v. The Barge FBL–585*, 364 U.S. 19, 26-27 (1960)).  By passing § 1404(a), Congress "intended to permit courts to grant transfers upon a lesser showing of inconvenience" than was needed for dismissal under the *forum non conveniens* doctrine.  *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955).

Section 1404(a) has two express requirements: (1) that the district to which defendants seek to have the action transferred be one in which "it might have been brought," and (2) that the transfer be "for the convenience of parties and witnesses" and "in the interest of justice."  *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985) (citing 1404(a)).  HTC could have brought this declaratory judgment suit to clarify its

rights in the Eastern District of Texas, as SLC—the holder of the patents at issue—is headquartered there.  Accordingly, the decision to transfer turns on whether the Court finds transfer to be warranted based on the "interest of justice" and the "convenience of parties and witnesses."  The defendants carry the burden of demonstrating that transfer is warranted.  *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1155 (S.D. Cal. 2005).

Courts consider both private and public interest factors affecting the convenience of the forum.  *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  Public interest factors include the local interest in having localized conflicts decided at home and the administrative difficulties flowing from court congestion.  *Id.* Also among the public interest factors is the interest of justice, which includes "judicial economy," *Regents of the Univ. of California v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997), and "such concerns as ensuring speedy trials, trying related litigation together, and having a judge who is familiar with the applicable law try the case." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989).  Private factors include the ease of access to sources of proof, the convenience of parties and witnesses, and the availability of compulsory process with respect to unwilling witnesses.  *Decker Coal Co.*, 805 F.2d at 843 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). Because it is not possible to mechanically apply these factors to all cases, they will be considered here under the statutory requirements of the interests of justice, convenience to the parties, and convenience to the witnesses.  *See Amazon.com*, 404 F. Supp. 2d at 1259.

# IV.  ANALYSIS

## A.  The Interests of Justice

Analyzing the interests of justice entails an inquiry into "whether efficient and expeditious administration of justice would be furthered" by transfer.  *Sherar v. Harless*, 561 F.2d 791, 794 (9th Cir. 1977); *accord Regents*, 119 F.3d at 1565.  "Consideration of the interests of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result."  *Regents*, 119 F.3d at 1565 (internal quotation marks removed).  Ultimately, "[l]itigation of related claims in the same tribunal is strongly favored because it facilitates efficient, economical and expeditious pre-trial proceedings and discovery and avoids duplic[ative] litigation and inconsistent results."  *Amazon.com*, 404 F. Supp. 2d 1256 at 1261 (quoting *Durham Productions, Inc. v. Sterling Film Portfolio, Ltd. Series A*, 537 F. Supp. 1241, 1243 (S.D.N.Y. 1282)).  Given that the District Court in Texas has several cases before it with SLC as a plaintiff and the same five patents at issue, and that at least two of those cases have progressed further than the instant one, it is likely that should this case proceed here rather than in Texas, judicial economy would suffer though this Court's duplication of Judge Gilstrap's efforts.

HTC has asserted that SLC has failed to show that "its pending actions in Texas . . . are related to this dispute beyond the fact they 'involve the same patents.'" (Pls.' Opp'n. 24.)  But despite HTC's argument, it is significant that that the same digital voice technology is involved in all the cases and that the defendants in the Texas actions—like HTC—are mobile phone manufacturers.  With respect to another phone manufacturer, LG, claim construction briefing is already pending before Judge Gilstrap, and this Court has little doubt that that process, along with the input of the technical advisor in that case, will leave Judge Gilstrap in a good position to understand the infringement issues and the

technical claims at the heart of this case as well.  This Court sees no reason to ignore
Judge Gilstrap's acquired expertise or to undertake a markedly similar claims process to
the one that the Texas Court has already undertaken.  Should SLC's motion be denied,
there would be a risk of duplicative proceedings and even inconsistent legal decisions,
given the substantial overlap of the subject matter.

        HTC also argues that it should have its choice of venue in California because it
was the first party to file, and it was still within the timeframe the Federal Rules of Civil
Procedure permit when it served its complaint on SLC several months after it had filed.
But though the "general rule favors the forum of the first-filed action, whether or not it is
a declaratory judgment action," the Federal Circuit has recognized that "trial courts have
discretion to make exceptions to this general rule in the interest of justice or expediency,
as with any issue of choice of forum.  These exceptions are not rare."  *Micron Tech., Inc.
v. Mosaid Technologies, Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008) (citing *Genentech v. Eli
Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993)).  A departure from the first to file rule
"may be warranted if there is 'the possibility of consolidation with related litigation.'"
*Cisco Sys., Inc. v. TiVo, Inc.*, No. C 12-02766, 2012 WL 3279532, at *7 (N.D. Cal. Aug.
10, 2012)  (quoting *Genetech*, 998 F.2d at 938).   That is so because "the existence of
multiple lawsuits involving the same issues is a paramount consideration when
determining whether a transfer is in the interest of justice."  *In re Volkswagen of Am.,
Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009).  Accordingly, judicial economy
considerations weigh in favor transferring this action to Texas "in light of its 'head start'
in these [patent] matters."  *See Cisco Systems*, 2012 WL 3279532, at *7 (transferring
patent case based on related patent matters in the destination venue).

## B.  Convenience to the Parties

SLC asserts that the Eastern District of Texas is the most convenient venue for it, as it is a Texas company and its CEO and several ARG employees are located there. (Reply Br. at 23.)  HTC counters that the Central District of California is more convenient to it, as it would be easier for its employees flying from Taiwan and Washington to reach California than Texas.  (Opp'n Br. at  22.)  HTC's concern with respect to its employees is negligible, though, as HTC is not itself at home in the Central District of California and its employees will have fly long distances to the venue regardless of whether the case proceeds in California or Texas.  Though ARC is based within the Central District of California, proceeding in the home district of its subsidiary SLC is a sensible course, as SLC is the sole owner of the patents at issue.

HTC further argues that the location of the evidence favors this district, as a substantial number of relevant documents are in the possession of third party chip manufacturer Qualcomm, located in San Diego.  (Opp'n Br. at 24.)  Nonetheless, SLC and its parent entities, as well as HTC, are sophisticated companies accustomed to conducting business and litigating throughout the country, including the Eastern District of Texas.  They are undoubtedly capable of conducting some discovery in California if necessary, and furnishing documentary evidence in electronic form where it is needed for litigation.  Similarly, to the extent that HTC suggests that it would be more costly for its witnesses to travel to Texas to give testimony, this concern pales in light of the overall cost of the litigation, and the judicial economy achieved by having the same court hear this case in addition to the several other cases before it that focus on the same patents and issues.

## C.  Convenience to Nonparty Witnesses

In its opposition brief, HTC indicated that witnesses from nonparty Qualcomm will also play an important role in this litigation, and that the relevant Qualcomm employees are based in Qualcomm's headquarters in San Diego.  (Opp'n Br. at 22.)  In its reply brief, SLC asserted that the relevant Qualcomm witnesses are actually based in the Eastern District of Texas, in a Qualcomm facility in Austin, as well as another location outside of California.  (Reply Br. at 24.)   In response to this assertion by SLC, HTC sought the court's permission to file a surreply[2] that asserts, with the support of a declaration from a Qualcomm employee, that the pertinent Qualcomm chip technology "is developed and maintained by a small team of engineers based exclusively in San Diego California."  (Dkt. 32 Pls.' Ex Parte Application for Leave to File Surreply; Dkt. 32-1, Pls.' Proposed Surreply at 1.)

HTC's assertion about the location of the Qualcomm employees, which this Court takes as true, is the strongest argument against transferring this case to the Eastern District of Texas.  Because Qualcomm's San Diego headquarters is within 100 miles of this Court, Qualcomm employees working there are within this Court's subpoena power. The Federal Circuit has indicated that a venue with usable subpoena power "weighs in favor of transfer, and not only slightly."  *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).  Subpoena power aside, the convenience for and cost of attending witnesses is also an important factor to consider.  *Id.*

Nonetheless, the *Genentech* Court was not confronted with a situation in which it was necessary to weigh the advantages of subpoena power over and convenience of several non-party witnesses against the substantial gains in judicial economy and

---

[2] HTC's ex parte application to file a surreply to HTC's motion to dismiss or transfer, Dkt. 32, is hereby GRANTED, and the proposed surreply, Dkt. 32-1, is deemed filed.

consistency that would be achieved by transferring a complex case to a district court that already had several extremely similar cases before it, and was already engaged in the process of claim construction, appointing a technical expert, and similar time-consuming steps designed to advance litigation and educate the Court.  Here, the Court finds that the balance of the factors tips in favor of transfer.

## V.  CONCLUSION

Accordingly, SLC's motion to transfer this case to the Eastern District of Texas is GRANTED, and SLC and ARC's motions to dismiss are DENIED without prejudice.


DATED:      September 10, 2015

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE